

Jose Catalan-Avila 85759-509
Springfield MCFP
P.O. Box 4000
Springfield, MO. 65801-4000



**FILED**
4/11/2025
MEN

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1:25-cv-04082
Judge Edmond E. Chang
Magistrate Judge Heather K. McShain
DIRECT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA               CASE: 1:22-cr-00067(2)

                    V

JOSE CATALAN-AVILA,                     MEMORANDUM IN SUPPORT OF THE
           Defendant;                   DEFENDANT'S MOTION TO VACATE,
                                        SET ASIDE OR CORRECT SENTENCE
                                        UNDER 28 U.S.C.§2255

        Comes the Defendant, Jose Catalan-Avila, Pro-Se, and files this
Memorandum in Support of the attached 28 U.S.C § 2255 Motion to Vacate,
Set Aside or Correct Sentence.


        The Defendant is filing this Motion with a Memorandum in Support
in a timely fashion as required by the Antiterrorism and Effective
Death Penalty Act of 1996("AEDPA") as contained in 28 U.S.C. § 2255,
paragraph 6, provides in part that:

        A one-year period of limitation shall apply to a motion under this
section. The limitation period shall run from the latest of-

    (1) the date on which the judgement of conviction became final;

    (2) the date on which the impediment to making a motion created by
        governmental action in violation of the Constitution or laws of
        the United States is removed, if the movant was prevented from
        making such a motion by such governmental action;

    (3) the date on which the right asserted was initially recognized
        by the Supreme Court and made retroactively applicable to cases

1

(3)-cont. on collateral review; or

(4) the date on which the facts supporting the claim or claims
presented could have been discovered through the exercise of
due diligence.

This motion is also being filed pursuant **Haines v. Kerner**, 404 US
519, 520-21, 92 S.Ct. 594, 30 L. Ed. 2d 652 (1972)(Court must liberally
construe a pro-se plaintiff's complaint, that if the Court can reasonably
read pleadings to state a claim on which a plaintiff could prevail, it
should do so despite a failure to cite proper legal authority.

The Petioner/Movant hereby presents this Memorandum in support with
relevant evidence and background concerning the Grounds that were raised
within the 28 U.S.C. § 2255 motion. The Petitioner/Movant has also supplied
a motion for discovery, a motion for the expansion of record, and an
attached motion for the appointment of Counsel to assist with or con-
duct an evidentiary hearing concerning the claims that are being raised
within the motion.

The Movant provides the following Memorandum of Points and Author-
ities as support for the Grounds raised.

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

As documented within the Government's Supplemental version of the
underlying offense, the Government presented an amended version of it's
record of the offense that led to the arrest and prosecution of Catalan-
Avila in case 22 CR 67-2. (See exhibit One-attached).

2

Also included is excerpts from Catalan-Avila's Grand Jury statements with the entire initialed statements being provided as exhibit Two.

The Defendant, as the Grand Jury Statement clearly showed, agreed to cooperate with the Government's investigation which was centered on the leader of the local distribution ring, and the relevant Cartel that was operating out of Mexico.

The Memorandum in Support includes statements made to the Grand Jury, the Government, and made under affidavit within this § 2255 motion to this court. These statements are requested to be filed under seal because allowing public access to these statements would clearly place Catalan-Avila and his family in grave danger. Neither him or his family would live out the term of his imprisonment.

The information that he has provided was given on the idea and promise that he would have been given probation and other concessions from the Government concerning sentencing and immigration. Due to his cooperation, the members of the Cartel and their associates would seek to kill him and his family as an example to others. A reasonable and experienced Judge can see that the Defendant provided information about what he and others did, who they took orders from, what the inner workings of the Cartel were concerning their distribution net-work, and the process by which they made heroin from opium. He also provided other requested information.

Because of the grave danger that this cooperation would place him in, he was told that there would be no public acknowledgement of his

3

statements and assistance with the Government. Everything would be kept secret or under seal. His attorney, Michael E. Bakér, assured him that the sentencing hearing and the related sentence was a mere formality and was done on record to keep his family safe. The fact that Catalan-Avila did not understand english and access to a translator during attorney-client meetings was not readily available left him unable to understand alla spects of the deal that he was becoming a party to.

After the sentencing, Catalan-Avila was told that he would be under a protective order until his cooperation and assistance with the Government was no longer required. As the record clearly shows, the Government never filed the promised Rule 35, never resolved the issue of his immigration status, and has left him, and his family, completely at the mercy of the Cartel and those that he used to work with. The issue of Catalan-Avila's safety is one of great concern because he was of great help to the government's case and the government still has not fulfilled it's promises. Evidence of his assistance is provided in the following excerpts and exhibits.

## GOVERNMENT'S SUPPLEMENTAL VERSION OF THE OFFENSE-(exhibit One)

FILED 02/20/24 (EVIDENCE presented to support the level of assistance provided by Defendant Catalan-Avila. Provided herein is excerpts relevant to Defendant's claims/grounds as described. The entirety of the Government's Memorandum is attached as exhibit One.)

(Page One, Para. One)- The Government submits this supplemental version of the offense to correct a factual misstatement in the Gover-

4

nment's Version, to provide a copy of defendant's testimony before the Grand Jury (exhibit A), and to clarify its position on the application of an offense level enhance ment under Guidelines Section 2D1.1(b)(12).

The Defendant points out that the Government's Supplemental version was not translated into spanish by the Government or by the Defendant's Counsel. It also failed to re-iterate the concessions that were promised to the Defendant in exchange for his testimony. As this Court can see, the level of cooperation that was provided by the Defendant would place him and his family in harms way. His Defense Counsel made it clear that the Government would protect him in exchange for his testimony about the Cartel and the local distribution network. If this was not the alleged agreement then the Defendant would not place himself or his family in danger. The fact that the Government closed it's Memorandum on page 6 with the following shows that there were other agreements in play. (See excerpt below from page 6 para. One)

[VIII. RECOMMENDATION

The Government will file a sentencing memorandum setting forth the government's position after reviewing the presentence investigation report.

cc: Michael Baker
    Attorney for Jose Catalan-Avila

    Special Agent Bill Roecker
    Federal Bureau of Investigation   ]   (Also provided in Exhibit One)

The government's version of the offense provides this court the view of an ongoing drug distribution network with direct ties going back to the supplying Drug Cartel in Mexico.

Excerpts from the Government's Supplemental version of the Offense.

In the Government's version, the Government stated, "By way of further background, in April 2020, the Defendant Catalan-Avila was arrested. After that, Hidalgo replaced Catalan with Santos Alquezada-Pedraza, who was previously one of Hidalgo and Defendant's narcotics customers." In fact, it was defendant's associate Andres Badillo who was arrested.

Andres Badillo was one of Hidalgo's narcotics customers. Defendant stopped working with Hidalgo in April 2020 after Badillo was stopped by police in the context of a different drug investigation.

Beginning in 2018, defendant distributed heroin for a Mexican drug trafficker, separate and distinct from Hidalgo, named Jose, a.k.a. "Zurdo". In 2018, defendant received two 3-kilogram shipments of heroin from Jose, which he later distributed to others. In December 2019, Defendant received 4.5 kilograms of heroin from Jose. In March 2020, defendant provided a sample of the heroin to a customer. About a week later, defendant distributed about one kilogram of heroin to that customer in exchange for $30,000.00, at Jose's direction Around the same time in March, defendant made the March 2020 heroin delivery to the CS on behalf of Hidalgo, after which he believed that law enforcement followed him to his house. (end page one).

(Begin page two of Government's Supplemental Version)

In late March or early April 2020, Jose asked defendant to deliver more heroin to the aforementioned customer. Defendant called Badillo and asked him to make the delivery for him. Andres agreed. Defendant

6

delivered the remaining 3.5 kilograms of heroin he had received from Jose, as well as some heroin he had received from Hidalgo, to Badillo in an air compressor. Defendant then passed the customer's information from Jose to Badillo for the heroin delivery. Defendant gave Badillo a Volkswagen with a secrete compartment in it for the delivery. Shortly after the scheduled heroin transaction, Badillo called defendant and told him that he had had a car accident, and the police had taken the "things," which defendant understood to be the heroin. Defendant reported this to Jose, who did not believe him. Defendant called the heroin customer multiple times to find out whether Badillo had actually had a car accident or had stolen the heroin.

In fact, law enforcement had arrested Badillo and seized the heroin from inside the Volkswagen's secret compartment, as well as from an air compressor in Badillo's garage.

Probation inquired about the government's position regarding the application of an offense level enhancement relating to the storage of narcotics. Section 2D1.1(b)(12) provides, "If the Defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." Application note 17 provides that this enhancement applies to the "storage of a controlled substance for the purpose of distribution," and further states such purpose "need not be the sole purpose for which the premises was maintained, but must be one of the Defendant's primary or principal uses for the premises."

In late March or early April 2020, after the Defendant believed law enforcement had followed him to his residence, defendant delivered the heroin to Badillo for storage." (end of excerpt from Govern. Supp.)

7

The evidence presented herein corroborates the Defendant's claim that he was denied effective assistance of Counsel because of the denial of the effective use of a translator during the plea bargaining process. The sensitive nature and the type of information that the Government requested from the Defendant during his statements to the Grand Jury clearly required his Counselor to ensure that his client was being provided protection at the time and in the future. Counsel was required to make his client understand the danger that he was placing himself and his family in.

Counsel was also required to make sure that the government met the terms of their plea deal with the defendant. The level of assistance that Catalan-Avila provided clearly made him and whoever the Cartel could get to him through marked individuals. The following statements provide this court and anyother reasonably minded individual evidence of the threat against his life that now exists. Yet this danger exists because of Counsel's complete lack of regard for his client's life and a failure to make sure that his client fully understood the ramifications of his actions.

On top of all of this, Counsel was ineffective because either the Counsel lied or misrepresented what the Government promised to do for his cooperation, or Counsel failed to hold the Government's feet to the fire to ensure that they lived up to the terms of the agreement. Counsel's refusal to object to the Government's noncompliance unless Catalan-Avila paid more money was clearly troubling. The level of risk to Catalan's life because of his cooperation becomes apparent with a close review of the magnitude and content of his cooperation with the

8

government through his statements before the Grand Jury and the back-
ground information about the operations of the Cartel in Mexico.

It is important that the Court recognizes how the plea agreement
was presented to the Defendant by the United States Attorney in cooper-
ation with the Defense Counsel with the aid of a translator. It amounted
to Defendant's complete cooperation, at the time and in the future, in
it's investigation into the local distribution network in Illinois as
well as how the Cartel operated within Mexico.

In exchange for his assistance, there was going to be an alleged
recommendation from the United States for no prison time/probation and
a recommendation to for to be allowed to remain in the United States
because the information that he was being required to provide would
cause the Cartel and members of his own family to place a hit order on
him requiring his death. What the Government was requesting from Catalan
require him to tell on the Cartel and other members of his family who
held position with in the Cartel itself.
The Government was also supposed to file a FRCP Rule 35 motion
for relief from the court's underlying sentence because of the level
of cooperation and the value of the information provided. The Court's
review of the evidence will support this claim herein.

All of this shows that the cooperation that was asked for by the
Government, was provided, at great personal risk, by the Defendant, yet
the Government did not meet their terms, which has left the defendant
in great danger from both the Cartel and his family. As the attached
Plea Agreement (Exhibit 3) and other related filings will show, the

9

Government made plea agreement that their own actions showed that they had no intention of fulfilling the terms of. Unfortunately, without the effective assistance of his own counsel, the Defendant did not understand what was happening. There is the appearances that his own counsel compelled him to cooperate and continue to provide testimony that placed his life in jeopardy. So not only did Counsel advise him to accept the plea agreement and meet the terms with his unreserved cooperation, but then left him "unprotected" when then Government did not follow through with it' own promises.

The Defendant appeared before this court and was denied the opportunity to gain a full understanding of what was going on. He was coerced by counsel to trust the government to fulfill it's promises, and told that he needed to "give the Court and the Government time" to make the "deal" happen. It was only after he was sent to prison and had the chance to study the case law in spanish and with the help of bi-lingual inmates in a law library did he realize that there were legal protections in place to prevent what the government and the Defense Counsel did to him. The following evidence clearly shows that the Defendant lived up to his end of the agreement as it was explained to him. This was partially outlined in the Plea Agreement, Section 11 on page 9, filed in Doc. #62 filed 04/11/23 (attached as Exhibit Three), "Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pretrial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding. Defendant agrees to the postponement of his sentencing until after the con-

10

clusion of his cooperation."

It is important that this Court take note that the terms of the Plea Agreement are contradictory in this regard because while the previous section stated that the sentencing would be postponed until "the conclusion of his cooperation," yet in Section 28 on page 16 the agreement requires the Defendant to understand "that his compliance with each part of the Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement." ( Attached as Exhibit Three-Plea Agreement.)

Again, it is important for this court to realize that the plea agreement or other filings that required the Defendant to gain an understanding of, was never provided in spanish. The record shows that there was limited access to an interpreter. This prevented the Defendant from gaining a full understanding of the proceedings or being allowed to fully assist in the preparation of his defense. This was especially prejudicial when coming to an agreement with the Government where there are terms that both parties are required to meet.

The following excerpts and statements that were provided by the Defendant to the sitting Grand Jury, at the request of the United States Attorney's Office, shows the level of cooperation that Catalan-Avila has provided upon request, (attached in the following pages and also labeled as Exhibit Two ). Certain promises were made but were later forgotten, omitted, or left out of the "filed" plea agreement. The amount of risk to his own personal safety can be ascertained by this Court in reviewing the following Grand Jury Statements and the attached affidavit.

11

Another piece of evidence presented herein for the Court's review is the following  Affidavit/Statement of events that is documented and sworn to under the penalty of perjury which is tru and correct in its typed presentation as contained in the following typed pages. They are referenced to as Exhibit 7.

### AFFIDAVIT OF JOSE CATALAN-AVILA
RECORDED AND SIGNED ON 02/27/25

I PRESENT THIS MOTION to Vacate, Set Aside, and Correct Sentence under 28 U.S.C. § 2255 for the grounds that are listed and for the purpose of showing that the U.S. Attorney's Office, with the help of Defense Counsel, did lie and make false promises to me, Jose Catalan-Avila 85759-509, in order to convince me to  provide statements against my family and the Drug Distribution Organization known from this point forward as the "Cartel".  I testify that there were not copies of the government's promises provided to me translated into spanish, of which I read and write. I also state that I did, on numerous occassions, ask for a qualified interpreter for the purposes of fully understanding what I was required to do and what the Government was going to provide me in return. This never happened and when I brought it up to the Defense Counsel, I was told that I had to cooperate and give the Government and the Court time to implement the terms of the plea agreement.

Honorable District Court Judge Edmond E. Chang and Mr. Baker, my Defense Counsel, took my right to a direct appeal as part of the plea agreement. Yet the Defense Counsel failed to ensure that the Government fulfilled thier promises to me. Mr. Baker, my lawyer, said that he would inform me of what the Government was supposed to do as we moved forward and he would stick by me no matter, what once I agreed to the Plea Agreement. I didn't understand why he did not make the Government do what they had promised concerning the sentence. I had paid him. He wasn't working for free. The government was not supposed to charge me with all of the Heroin

12

that I stated that I distributed for other people in Chicago. I was working for other people and I was providing the information about that business. My cooperation was to be provided to the Government to assist them with their investigation into the Cartel and what was happening in Illinois, it was not supposed to taken into the case against me. I would have never volunteered all of the information if I knew the government was only going to bury me with it. It is clear that the information that I gave and was willing to share made my life worth nothing with my family and with the people that I grew up with and worked with.

The DEA also, at the directions of the U.S. Attorney's office, took my visa and my identification papers. I surrendered my family and the Cartel. I sacrificed a lot in order to change my life and to assist the United States in its battle with the Cartel. I provided the following people to the Government. Jose Carlos Catalan Casteneda, Jose Salgado Reyna, Isidoro Salgado Reyna. I also provided photographs and directions to where 2 of the Capos are. I explained what regions each of them controlled and was willing to provide the names of the politicians and police that they have in their pockets. Thet have been delivering heroin into this part of the United States for over twenty years. I also provided Cesar Quintanilla, Pablo Salgado Reyna, Santiago Avila Gomez, Adan Catalan Gomez, and Edergvil Figueroa.

During this time period, my wife provided $25,000.00 to Mr. Baker from February to approximately August of 2023. Once the last payment was paid, and Mr. Baker was paic in full, he stopped working on my case and he ceased speaking with me. He even refused to file a notice of Appeal.

On April 17, 2024, after I was sentenced, I spoke with Mr. Baker about the fact that I wanted to appeal. He told me that it was within my right to do so. There was a recorded phone call concerning this conversation at the jail that I was being held in.

Because of my desire to appeal for a variety of reasons, I tried to call my attorney on a number of occassions but he refused to answer. After a week had passed by, since I was sentenced, on or about April 25, 2024 Mr. Baker finally answered the phone and I requested that he bring an interpreter to meet with me because I had reviewed my papers with an interpreter and knew that there was something significantly wrong. He said okay but he never showed up and he never answered the phone again.

## Lawyer Visiting History

Into the first week of August 2023, Mr. Baker, my lawyer visited me at Kankakee, but without an interpreter. The little bit of what he said was confusing and unclear for the most part. I only understood that he would be helping me fight my case. He admitted that he didn't understand spanish and he knew that I could not speak or understand english.

Approx. December 30, 2023 he called and had an interpreter named Alex, telling me that I would have an interview over the phone for the interpreter's approval. He also informed me that the Government was moving forward with the agreement of recommending a sentence of 30-37 months. I explained the situation with my family, my children's therapy, and our current financial situation. He stated, my lawyer, that I should bring all of these concerns up with the Judge. I asked about my VISA status but my lawyer stated that he did not know anything about it at that time. He mentioned that my Co-Defendant signed for 112-140 months and was sentenced to 25 months under those numbers. He stated that I should receive a better deal if I pled guilty. Alfonso received 86 months.

14

Approximately in the first week of March in 2024 I received my probation report/pre-sentence investigation report. The next day I called Mr. Baker and asked him to come and explain it to me with an interpreter or call my fiance and explain it to her because she is able to speak english. When I spoke with her she stated that my attorney said that everything was going to be "fine and for me to not to worry."

On April 14, 2024 Mr. Baker called me around 10am and talked for about 20 minutes and assured me that everything was going well. Then he claimed that I had signed a 43 month deal and it looked good. I pointed out that I did not sign a deal for 43 months and that he was misleading me. I pointed out that my cooperation was placing me and my children in harm's way and I should not get any time and should be protected because of what information that I had provided.

On April 16, 2024, Mr. Baker arrived at Kankakee to visit me one day before my sentencing hearing. He explained that I had previously signed for a 43 month sentence a year ago. I told him that I did not agree to that after I was promised protection and little or no jail time in exchange for the information that I was providing. The first offer that was made showed a recommendation for 30-37 months with a decrease based on the type of information that I provided and the they would take into consideration about the fact that I did not escape.

Ultimately, my lawyer failed to represent my best interests in this case, and did not object or file a complaint when it became clear that the Government was not going to keep it's end of the plea agreement.

15

## HISTORY

Before my arrest on July 22, 2023, I had about 6 to 7 visits with the DEA from 2 to 4 hours each visit. The visits occurred in the back of the courthouse, where I was sentenced. In the last 2 visits there was a supervisor there. He sat in the meetings and took notes concerning the information that I was providing. I went into detail about how the Cartel operated, how they processed the heroin, and how they functioned when they shipped it to the larger cities. Specifically to Chicago and Newark and other places,

I met Mr. Andres Badillo in the final days of 2015. When Jose Catalan-Castaneda was deported, he presented me to Mr. Andres. Mr. Badillo already worked in distributing heroin  and later I delivered heroin from Alfonzo.

In the begining of 2020 I delivered a sample of heroin to a person in Chicago on Fullerton and Narragensey street by the order of Jose Salgado Reyna and a week later by the order of Jose, delivered a kilogram of heroin in exchange for $30,000. Approx 2 weeks later I decided not to work anymore and I told Jose and Alfonso. I also told Mr.Badillo if he wanted to deliver the heroin and the Cartel would pay him if he would do it. He said okay. He explained that he had delivered 3.5 kilos of heroin from Jose Salgada Reyna and about 1.5 to 2 kilos from Alfonso. Mr. Badillo had in his possession the heroin that he would be responsible for delivering and he would be in charge of distributing, and then when the job was complete, he would be paid.

The Heroin that Mr. Badillo had in his possession was confiscated by the DEA. It turned out that the person that he sold the heroin to worked for the DEA as an agent and because Badillo wasn't arrested, Jose Salgado Reyna believed that Mr. Andres and I robbed his heroin and started pressuring me to investigate about what had really happened to the heroin. I called the agent up, because I gave them the infor- mation they needed in order to confiscate the drugs, and asked if he could help me recover the drugs. In those days I saw him close to my house and told him that the Cartel people in Mexico didn't believ the drugs were apprehended or confiscated and wanted their money or their drugs back. Andres Badillo mailed me a photograph of his supposed lawyer and I mailed it to the agent and to Jose to make him believe me, but Jose said that it wasn't sufficient proof and that I had his drugs and he wanted me to give them back. The DEA agent confirmed that the drugs had been confiscated. However Jose still didn't believ me. So, in Jose Salgado Reyna's mind, I had stolen his drugs even though they were actually in the hands of the DEA. So the Government knows that the Cartel believes that I either stole their drugs or that I cooperated with the United States Government and surrendered their drugs to the American government. So if I get deported back to Mexico then the Cartel will execute me and my family. I have been cooperating with the DEA since my arrest in exchange for little or no sentence and protection from the Cartel.

I point out these issues to this Honorable Court because I was promised by my attorney, Michael E. Baker, and by the U.S. Attorney, along with the DEA, that if I helped and cooperated with all of what they wanted or with all that I knew, then I would be given protection

for me and my family. I want you to know that my family has "belonged" to the cartel for years. I had no real choice but to work for them all of my life. I knew that I could not allow my wife or my children to remain under the Cartel's thumb for the rest of their lives, and I needed to do something to change the direction of my life and their future. So I cooperated. Unfortunately I have been left out in the open and so has my family. This cannot be allowed to stand.

As of this date, I am waiting for the DEA to tell the truth about the help that I provided. They made a claim that some of the names provided were made up names. I wait for them to show me what names that they are talking about. All the people that I spoke to them about are family who are in the Cartel and who I ate and lived with. Every name that I gave them are real people within the Cartel. I was truthful when I told them that I had more power than Jose Sagado Reyna. I also gave them the leaders of the Cartel after both Jesus Nava and Arturo Beltran Leyua were killed, the deputy who controlled the Mountain Range of Guerrero, competed for the territory that was up for grabs and took control. Nothing gets moved out of that area without his approval or without his getting a piece of the price.

The Cartel has it's new successors in line already. They talk to my parents. This is not a game and it all can be verified. They want me dead. They are leaving my family alive now as a warning to not say anything else. But I already know that they will kill me and my family when I am released. All of this is going to happened because the U.S. Attorney's lied as did my attorney, and refused to stick with their side of the bargain. I ask for an attorney and an evidentiary hearing.

**CERTIFICATE OF SERVICE**

I, _Jose Catalan-Avila_____, herby certify that true and Correct copies of the foregoing motion was

sent on this _20_ day of _March_____, 20 _25_ pre-paid first Class mail to the Office of the

Clerk at _U.S. District Court/Northern District Illinois._____, and

sent a copy of this 2255 motion _____, to the Clerk of the Court for

the _United States District Court_____

    219 South Dearborn Street
    Chicago, Ill. 60604

Signed

_____
Defendant

Jose Catalan-Avila

Jose Catalan-Avila #85759-509
MCFP Springfield
P.O. Box 4000
Springfield, MO 65801-4000



United States District Court
Northern District of Illinois Eastern Division
219 South Dearborn Street
Chicago, IL 60604



CERTIFIED MAIL

9589 0710 5270 2359 4982 38

RE: Case #1:22-CR-00067



04/07/2025-18

Jose Catalan-Avila
MCFP Springfield
P.O. Box 4000
Springfield, MO 65801-4000



United States District Court
Northern District of Illinois Eastern Division
219 South Dearborn Street
Chicago, IL 60604



**CERTIFIED MAIL®**

9589 0710 5270 2359 4982 45



04/07/2025-23

RE: Case #1:22-CR-00067
#1